ROSSER v. LEVI et al.    (No. 8109.)

(Court of Civil Appeals of Texas. Dallas. Feb. 22, 1919. Rehearing Denied March 22, 1919.)

1. BROKERS &#x2039;&#x2014;&#x203A;96 — AUTHORITY TO RECEIVE PURCHASER'S DEPOSIT.

A broker to sell property has no inherent authority to receive part payment or earnest money from the purchaser.

2. BROKERS &#x2039;&#x2014;&#x203A;103 — PURCHASER'S PAYMENT TO BROKER—RATIFICATION.

That vendors signed purchaser's offer reciting payment of $500 as part of purchase price without demanding payment of said sum held, in view of agreement between vendors' brokers and purchaser, of which agreement vendors knew nothing, not to constitute ratification of payment to brokers so as to make vendors liable for return of the $500, where purchaser receded from offer because of material alteration of the same.

3. PRINCIPAL AND AGENT &#x2039;&#x2014;&#x203A;166(1) — UNAUTHORIZED ACT—RATIFICATION.

A ratification of an unauthorized act or contract, to be effectual and obligatory upon alleged principal, must be shown to have been made by him with a full and complete knowledge of all the material facts.

4. APPEAL AND ERROR &#x2039;&#x2014;&#x203A;1040(3)—SUSTAINING OF SPECIAL EXCEPTION—HARMLESS ERROR.

Error in sustaining special exceptions that cause was barred need not result in reversal, where plaintiff was not entitled to recovery against them in any event.

Appeal from Dallas County Court; T. A. Work, Judge.

Suit by V. O. Rosser against Marcus C. Levi and others. From the judgment rendered, plaintiff appeals. Affirmed.

J. F. Evans, Jr., Marshall Thomas, and Crane, Crane & Umphres, all of Dallas, for appellant.

Grover Adams, Thompson, Knight, Baker & Harris, and Alex F. Weisburg, all of Dallas, for appellees.

RASBURY, J. Appellant sued appellees, Marcus C. Levi, J. K. Hexter, Jas. G. Houston, and De Witt Bennett, composing the firm known as the Bennett Company, real estate brokers, hereafter referred to as the Bennetts, alleging that he entered into a written contract with Levi and Hexter by which they agreed to sell and appellant to purchase a lot in the city of Dallas, in which transaction Levi and Hexter were represented by the Bennetts, their agents, and to whom appellant paid $500 as part of the purchase price of said lot, and which amount appellant was entitled to recover back for the

reason that the contract of purchase was materially changed without the consent or ratification or appellant after he had executed and delivered same. Appellees Hexter and Levi, after general demurrer and denial, pleaded specially that they were not liable for said sum for the reason that the Bennetts acted as agents of appellant in receiving said money, which was never paid over to them, and further that any change made in the contract was with the knowledge and consent of appellant or ratified by him. Appellees Levi and Hexter also by cross-action sought to recover from appellant $100 on the ground that appellant, without legal excuse, repudiated his contract to purchase said lot, said sum representing the difference between the amount he agreed to pay for said lot and its market value at the time of such repudiation. Appellees, the Bennetts, tendered the general demurrer, special exception presenting the bar of the two-year statute of limitations, and the general denial. Upon call of the case the court, among other matters, sustained special exception presenting the bar of limitation of appellant's cause of action against the Bennetts, to which appellant excepted. There was trial to jury, upon conclusion of which the court peremptorily directed the jury to return verdict against appellant on his cause of action against Levi and Hexter and a similar verdict against Levi and Hexter on their cross-action against appellant. Such verdict was returned, followed by similar judgment, from which this appeal is taken.

The fact deducible from the record and necessary to a disposition of the issues presented are in substance these: Levi and Hexter, owners of a lot in the city of Dallas, listed it with the Bennetts, real estate brokers, for sale. Thereafter the Bennetts sold same to V. O. Rosser. Rosser acted in the name of A. W. Macon, his employé, but, since it is not denied that Rosser was the real party in interest, no further reference will be made to Macon. The sale to Rosser was evidenced by an agreement in writing signed by Rosser and Levi and Hexter, and recited, in substance, that Levi and Hexter had received $500 from Rosser in part payment of the lot for which Rosser agreed to pay $30,625. The consideration was to be paid part in cash, part by notes of Rosser, and the balance by Rosser accepting conveyance "subject" to an existing indebtedness against the lot. There was also provision for the deferred payments to bear interest, for the payment and adjustment of taxes, etc., not important to detail. If examination of abstract disclosed title was not good, and if it was not made good within 60 days after attorney's opinion, the $500 was to be returned to Rosser. The contract was a printed form with blanks to be filled in according to the agreement, and was prepared and signed by Rosser before it was delivered to Levi and Hexter. In one of the blanks it was recited that Rosser would pay 7 per cent. per annum interest on deferred payments, the interest to be paid annually. When the contract was received by Levi and Hexter, they signed same and altered the contract so as to make the interest on the deferred payments payable semiannually. The change was made by Hexter, who says the change was made to conform the written portions to the printed, which in every reference to the interest recited that it was to be payable semiannually. When Rosser signed the contract, he delivered the same to the Bennetts with his check for $500 payable to the Bennett Company or order. Simultaneously with the execution and delivery of the contract of purchase and the check Rosser took from the Bennetts an agreement in writing reciting that in the event Rosser elected to forfeit the $500 advanced in the manner detailed the Bennetts would assume one-half of the loss. At the time Rosser delivered the check to the Bennetts they notified Rosser that it was their purpose to deposit the money to the credit of the Bennett Company, to which Rosser made no objection. It was so deposited. The time in which the purchase was to be completed was extended twice at the request of Rosser. Before the expiration of the last extension Rosser advised the Bennetts that he would not proceed with the purchase, but instead would forfeit the $500, and at that time agreed with the Bennetts that they could retain the $250 which they had agreed to refund him in event he concluded not to proceed with the purchase on condition that the Bennetts would allow him that sum on his next indebtedness to them as brokers, to which the Bennetts assented. Following out his purpose to recede from the contract, Rosser refused to accept deed, pay the cash consideration, and sign note and trust deed when presented to him. Subsequently he learned that the contract had been changed in the manner already recited, and that the deed tendered bound him to assume the existing indebtedness against the property instead of taking the same "subject" to the existing lien, whereupon he notified one of the Bennetts that, it appearing that Levi and Hexter had never accepted his offer, but changed it materially without his knowledge or consent, nor tendered deed, etc., in compliance therewith, he was not bound by his offer, and hence entitled to recover the $500 deposited by him. The foregoing facts are not in material controversy. Whether Rosser consented to or ratified the change in the contract, or whether Levi and Hexter knew at the time they signed the contract that the money had been paid to the Bennett Company, were matters in dispute.

[1] Upon the facts so related we have reached the conclusion that the judgment of

the trial court in peremptorily directing verdict for appellees Levi and Hexter should be affirmed. While the several propositions advanced by appellant under assignment of error challenging the action of the court in the respect stated are conceded to be sound, the facts do not, in our opinion, warrant their application. It is declared by an accepted authority that—

"Except in a case of custom or usage, of trade to the contrary, or an estoppel arising against the principal, a payment made to a broker, and not received by the principal, is not ordinarily binding on the latter as a payment to him, unless the broker has express or implied authority to receive it. * * * Thus a broker employed to sell property has no inherent authority to receive the price, and consequently, if the purchaser pays it to him and the principal does not receive it, it does not constitute a payment to the latter, especially when the purchaser knows, or should know, that the broker is acting as such, or where the principal is known to the purchaser." 9 C. J. 670.

Another accepted authority declares that—

"Moreover, as a broker is usually given only such authority as is commensurate with the duty of negotiating a deal, he is deemed to have no implied power to receive payment in behalf of his employer, and a debtor of the latter making payment to him does so at the risk of having to pay again in case the broker defaults." 4 R. C. L. 259.

The facts just detailed by us fail to disclose any of the exceptions to the general rule, such as custom, usage, or estoppel, which would warrant the payment of the purchase money by Rosser to the Bennetts, the brokers, save one circumstance presently to be noticed. The principals, Levi and Hexter, did not receive the payment made to the brokers and hence it was not a payment to them, and as a consequence they are not bound to account for same, even though there was such material alteration of the contract as to warrant a holding that the offer made by Rosser was never accepted, and we incline to that opinion. Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323.

[2, 3] But it is contended by appellant that appellees Levi and Hexter knew when they accepted the offer of Rosser that it recited the payment of $500 as part of the purchase money, and that their failure to demand the money was a ratification of or an acquiescence in its payment to the brokers which they are estopped to deny. There would be undoubted force in the contention but for the reason that it is a further rule consistent with the one invoked that—

Any "ratification of an unauthorized act or contract, in order to be made effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full and complete knowledge of all the material facts connected with the transaction to which it relates." Mechem, Agency, vol. 1, par. 395.

"Assent may in some cases be presumed from acquiescence after notice. But it is a principle too clear for doubt or question, and of universal recognition, 'that there can be no binding ratification without full knowledge.'" Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611.

If it may be said that, when Levi and Hexter accepted the offer of Rosser without demanding the money from the agent, they assented that the agent should receive it, such assent in law contemplated that the money should be unconditionally received for the very purpose recited in the agreement; that is to say for the use and benefit of Levi and Hexter. The facts, in our opinion, disclose that Rosser paid the money to the Bennetts, and they received it under agreements and circumstances which never contemplated that it should be paid to Levi and Hexter in the event Rosser receded from his offer, and concerning which Levi and Hexter knew nothing. It is in the record without dispute that the Bennetts, when the money was paid them, advised Rosser it was their intention not to retain it for their principal, but to deposit same to their personal credit. Rosser knew that, if they did so, it would not be a payment to Levi and Hexter, and yet did not object. Subsequently, and when he had concluded to recede from his offer to purchase, he agreed that the entire $500 should be appropriated by the Bennetts to their individual use if the Bennetts would, when next they represented him in a similar deal, allow him $250. It is difficult to argue under the facts related that the money paid to the Bennetts was not a payment to Levi and Hexter. Neither Rosser nor the Bennetts intended they should have the money if it was forfeited. Their disposition of it upon forfeiture ought to, and does, in our opinion, settle that issue. The fact that it later developed that a forfeiture could have been avoided does not affect the fact that Rosser did dispose of or divert the fund.

[4] Complaint is made of the action of the court in sustaining special exception of the Bennetts which presented the issue that appellant's cause of action against the Bennetts was barred by the two-year statute of limitations. The money was paid to the Bennetts, according to the petition, October 25, 1913. The original petition is not in the transcript, but it appears from an amendment thereof that the original suit was filed November 2, 1914, which was less than two years after the cause of action accrued. From the transcript it appears that the Bennetts were made parties defendant at the time the suit was filed; at least that inference is as reasonable as would be the inference that they were not. As a consequence on the record as presented to us it appears that the court did err in sustaining the special exception. However, that

fact need not, in our opinion, result in a reversal of the cause, for the reason that we are also of the opinion that the appellant was in no event entitled to recover against the Bennetts. As between Rosser and the Bennetts, the fund, in our opinion, belonged to the former, since it does not appear from the record that the Bennetts had any interest in the fund, unless they were by custom entitled to a portion of it if forfeited by Rosser, which is suggested in the testimony of one of the Bennetts. Rosser's right to recover of the Bennetts did not depend upon the liability of Levi and Hexter for the reason, as we have said, that it was never received for the benefit of Levi and Hexter. Rosser waived liability of the Bennetts in the manner we have recited. He did not make that agreement under any mistake of fact so far as relates to the Bennetts. What induced the arrangement does not appear. It may be that he believed the usefulness of the Bennetts in the future would warrant the arrangement. In any event the agreement was made, and we know of no legal objection to its binding force.

Appellees Levi and Hexter in their brief consent that their cross-assignment may be overruled if the case is affirmed, and for that reason it is not considered.

Finding no reversible error in the record, it becomes our duty to affirm the case.

Affirmed.